**Affirmed and Opinion filed August 9, 2012.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-11-00150-CR

———————————

### SYLVANUS RENE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1257226**

## OPINION

Appellant Sylvanus Rene challenges his conviction for sexual assault of a child under the age of seventeen, arguing that the trial court abused its discretion in admitting, over his objections, printouts of photographs from a social-networking website. Because we conclude that any error in the admission of this evidence was harmless, we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2008, when complainant P.B. was 16 years old, classmate Cedric Robinson a/k/a "Turk" told her to call a particular telephone number if she wanted to make some money. P.B. did so, and spoke with a man named Dante who arranged to pick her

up when she returned home from school. Dante drove her to an apartment where she was introduced to appellant, who uses the name "Lo." Appellant asked P.B. her age and whether she knew how to dance. P.B. told appellant she was 16, and appellant stated that he would have to get P.B. a fake identification card. He asked P.B. to perform oral sex on him so he could evaluate her skill, and she did so. Appellant then called Dante into the room and the complainant performed oral sex on him as well. P.B. stated that after this, appellant required her to live in an apartment that appellant shared with his girlfriend. While living there, P.B. worked as a prostitute and a topless dancer, and appellant kept all of the money that she earned. He told her the prices she was to charge for sex with others, and had sex with her himself four or five times.

After living with appellant for several weeks, the complainant returned home and spoke with her mother and a police officer about what had been occurring. The officer accompanied P.B. back to appellant's apartment to retrieve her things. P.B. told the officer that she wanted to take a video camera that contained footage of her. The videotape, which was shown to the jury at appellant's trial, showed the complainant performing oral sex on appellant. The jury found appellant guilty of sexual assault of a child under the age of seventeen.

During the punishment phase of trial, Harris County Deputy Investigator Dennis Wolfford testified that in May 2008, he was investigating a homicide in which Joshua Lamb, the perpetrator, was driven to the scene of the homicide by appellant. Wolfford went to a townhouse at the Hunterwood Apartments to question appellant as a possible witness. Appellant was the only male at the townhouse, where officers seized two shotguns. Appellant told the officers about one of the guns, which was found in the closet of a bedroom that contained only men's clothing. The gun was loaded and had a shell in the chamber. Appellant was arrested for unlawful possession of a firearm, and pled guilty to that offense.

2

Wolfford subsequently searched social-networking websites for a profile of appellant and discovered a MySpace profile identified as belonging to "137's Don Lo." Wolfford testified that the number 137 in this profile refers to "137 Mob," a subset of the gang known as the Bloods. He printed out copies of a number of photographs from the MySpace profile, and the State offered them as evidence. Some of the photos show appellant displaying his tattoos or making gang signs with his hands. In several photos, appellant is shown with a pistol and a large amount of cash, and one photo depicts appellant and Joshua Lamb holding pistols. In this photograph, appellant is wearing a T-shirt depicting a sign modeled on the highway marker for Interstate-10, but with the words "Eastside 10" on it, and the number "137" below the sign.

Appellant objected to the admission of the printouts on the grounds that (1) the proper predicate had not been laid, (2) there was no evidence that the appellant created the profile or posted the material, (3) there was no evidence to show that the photographs had not been altered, (4) there was no evidence that the photographs were taken after his conviction,[1] and (5) any relevance was substantially outweighed by the danger of unfair prejudice. The trial court overruled the objections.

After introducing the printouts, the State offered additional evidence about appellant's tattoos, gang membership, and gun use. A deputy sheriff authenticated photographs that he had taken of appellant's tattoos in June 2009, and these photos were admitted into evidence. Deputy Michael Squyers, a member of the Gang Suppression Unit of the Harris County Sheriff's Office, testified about indicators of gang membership, and referred both to these photographs and to the photographs printed out from the MySpace profile.

---

[1] Presumably, defense counsel was referring to appellant's prior felony conviction, such that photographs of appellant with a firearm would appear to be evidence of the extraneous offense of being a felon in possession of a firearm. This objection is not reurged on appeal.

Squyers stated that he identifies gang members for inclusion in the "Gang Tracker Database" based on referrals, interviews, tattoos, and websites. He stated that appellant is in the database. Squyers testified that "the Bloods" is the name of a street gang with many subsets such as the "59 Bounty Hunter Bloods" and that members use certain symbols. When he was shown printouts from the MySpace website, Squyers identified one of appellant's hand signs as a symbol for the Bloods and another as a sign for "east" or "east side."

Most of Squyers's testimony concerned appellant's tattoos as shown in the photographs taken by a law-enforcement officer. Among appellant's tattoos, Squyers identified images of a hand making the gang sign for the Bloods and another hand making the sign for "Crip killer." Squyers stated that "the Crips" is the name of a rival gang. Appellant also has a tattoo of the word *damu*, which Squyers identified as the Swahili word for "blood." Moreover, "Bounty Hunter" is tattooed across appellant's chest, and Squyers interpreted the words as a reference to the "59 Bounty Hunter Bloods." In addition to these, appellant has tattoos of pit bulls, of a row of five five-pointed stars, and of a man wearing a five-pointed crown. According to Squyers, tattoos of pitbulls are common among members of the Bloods, and the number five is significant to them. Moreover, when asked how he knew appellant's rank in the gang, Squyers testified that appellant "stated he was a five-star general." Squyers explained that this is the highest rank underneath the gang's president. Appellant also has tattoos of the Houston skyline; of the "shield" emblem of Interstate 10; and of the street signs at the intersection of Uvalde and Woodforest, which is located on the east side of Houston. Finally, he has tattoos of the faces of two small children, a boy and a girl.

The jury also heard testimony during the punishment phase about some of appellant's extraneous offenses. Keon Addison testified that in July 2005, appellant shot him in the chest. The shooting occurred at an apartment complex named "The Oaks of

4

Woodforest," located on Uvalde on the east side of Houston. Glenn Jackson testified that in April 2008, "Turk" robbed him at gunpoint, and then Turk and appellant punched Jackson before Turk forced him at gunpoint into the trunk of a car driven by appellant. Jackson escaped by releasing the trunk from the inside and jumping from the moving car.

Ultimately, the jury assessed punishment at sixty-five years' confinement and a fine of $10,000.[2] Although appellant does not challenge his conviction, he contends that his sentence was based on reversible error. In a single issue, appellant argues that the trial court abused its discretion when, during the punishment phase of trial, it admitted printouts of photographs from the MySpace website over appellant's objections.

## II. STANDARD OF REVIEW

We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied,* 131 S. Ct. 2966, 180 L. Ed. 2d 253 (2011). We will not conclude that the trial court abused its discretion unless its decision lay outside the zone of reasonable disagreement. *Id.* Moreover, we must disregard nonconstitutional errors that do not affect the appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). We will conclude that the erroneous admission of evidence did not affect the appellant's substantial rights if, after examining the record as a whole, we have "'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)). In evaluating whether the jury was adversely affected by evidence that was erroneously admitted, we consider everything in the record, including

---

[2] Appellant had pleaded true to a prior felony conviction for assault, and stipulated to prior convictions for theft, possession of marijuana, assault, unlawfully carrying a weapon, and two counts each of failure to identify oneself to a police officer and assault of a family member.

the other evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, the way in which the erroneously admitted evidence might be considered in connection with other evidence in the case, the jury's instructions, the theories of the defense and the prosecution, the arguments of counsel, and the extent to which the State emphasized the error. *Id.*

## III. ANALYSIS

The Court of Criminal Appeals recently addressed authentication of computer printouts of the contents of social-networking websites such as MySpace. In *Tienda v. State*, Ronnie Tienda, Jr., a/k/a "Smiley Face," was convicted of murdering David Valadez in a shootout on an interstate highway in Dallas. 358 S.W.3d 633, 634–36 (Tex. Crim. App. 2012). The State offered evidence associated with three MySpace personal profiles, including account information and printouts of profile pages on which photographs, comments, and instant messages were posted. *Id.* at 634–35. Tienda objected that the State "had not laid the proper predicate to prove that the profiles were in fact what the State purported them to be, namely, declarations that the appellant himself had posted on his personal MySpace pages." *Id.* at 635. The Court of Criminal Appeals held that there was "ample circumstantial evidence—taken as a whole with all of the individual, particular details considered in combination—to support a finding that the MySpace pages belonged to the appellant and that he created and maintained them." *Id.* at 645. The circumstantial evidence included the following: (1) the MySpace user identified himself using a name that was the same as, or a derivative of, the defendant's legal name or nickname;[3] (2) the user's stated email address included or was derived from the defendant's legal name or nickname;[4] (3) the user's stated location was the same city in which the charged offense

---

[3] *Id.* at 642–43.

[4] *Id.* at 642.

6

took place;[5] (4) the user's stated gender was the same as that of the defendant;[6] (5) the user's stated age on a given date was the same as the defendant's age on that date;[7] (6) the user referred to the complainant or the offense;[8] (7) the user referred to a person as a "snitch," and a person of the same name later testified against the defendant at trial;[9] (8) the user referred to the conditions of defendant's release;[10] (9) the user's stated birthday was the same as the defendant's birthday;[11] (10) photos posted on the profiles appeared to be self-portraits of Tienda;[12] and (11) the profile page and one of defendant's tattoos appear to refer to the same local gang.[13]

Here, there is less circumstantial evidence than was present in *Tienda*. There is no evidence concerning the profile user's stated email address, gender, age, date of birth, or location. There also is no evidence that the profile contained references to the

---

[5] In *Tienda*, the profile user identified his location as Dallas or "D Town." *Id.* at 642. The court identified Dallas only as the city in which Valadez was murdered; the city in which Tienda resided is not stated in the opinion. *See id.* at 634. The court also mentioned that in two of the three accounts, the user's stated zip code was 75212, *id*. at 642, but the court did not identify a connection between this zip code and any person or event in the case.

[6] *Id.* at 643, 644.

[7] *Id.* at 643 nn.39 & 41, 644 n.44.

[8] On one of the profile pages, the user had posted the message "RIP David Valadez," accompanied by a link to a song. Valadez's sister testified that the song was one that had been played at Valadez's funeral. *Id.* at 643.

[9] *Id.* at 645 & n.49.

[10] On October 24, 2007, Tienda "was released on a pretrial bond with an ankle monitor," and on September 21, 2008, the MySpace user posted messages complaining that "I ALREADY BEEN ON DIS MONITOR A YEAR NOW" and "STILL ON A MONITOR SO I AINT BEEN NO WHERE IN A BOUT A YEAR NOW . . . ." *Id.* at 644–45 & n.46. A photo posted on another of the MySpace profiles showed Tienda wearing an ankle monitor. *Id.* at 644 n.46.

[11] On September 21, 2008, the user sent a message to another user that "MY B DAY WAS O THA 12TH U FO GOT BOUT ME," and court records showed that Tienda's birthday is on September 12th. *Id.* at 645 & n.47.

[12] *Id.* at 643 n.40, 644 n.43.

[13] A statement on one of the profile pages was signed "NS XVIII ST," and witnesses testified that (a) this refers to a gang known as "Northside 18th Street," and (b) the number "18" is tattooed on the back of Tienda's head. *Id.* at 644 n.42.

7

complainant, to the charged offense, to any witnesses who testified at trial, or to the conditions of appellant's release pending trial. None of the photographs appears to be a self-portrait.

There is, however, some circumstantial evidence that is similar to the evidence described in *Tienda.* Wolfford testified that he discovered this MySpace profile when he searched social-networking websites for appellant's name; thus, there is some evidence that the person who created the profile identified himself by appellant's name or nickname. Headings at the top of some of the pages printed from the profile indicate that it belongs to "137's Don Lo," and although there is no evidence that appellant used the nickname "Don" or "Don Lo," several witnesses testified that appellant uses the nickname "Lo." Appellant appears in nearly every photograph posted on this profile,[14] and in many of the photographs, appellant is shown displaying some of his distinctive tattoos. The tattoos shown in the printouts from the MySpace profile match those shown in the photographs of appellant that were taken and authenticated by law-enforcement personnel. In some of the MySpace photos, appellant is making gang signs with his hands, including a sign for the Bloods and a sign typically made for "east" or "east side"; appellant has tattoos of similar symbols and handsigns on his body. In one of the MySpace photos, appellant is displaying the tattoos on his forearms; the tattoo on one arm shows the face of a small boy, and the tattoo on the other arm shows the face of a little girl. The caption to this photo is "THE HEIR TO MY THRONE." In the same MySpace photo album are a number of pictures of a little boy and a little girl, and during the punishment phase of trial, appellant's aunt authenticated recent photographs of appellant's son and daughter. Based on a comparison of the photographs, a reasonable jury could have concluded that the tattoos on appellant's arms and the photographs of a small boy and girl on the MySpace profile depict appellant's two children.

---

[14] Most of the photos in which he does not appear are photographs of two children, discussed *infra*, and of a collection of sneakers.

8

Even assuming, without deciding, that the circumstantial evidence here was insufficient to permit a jury to conclude that the MySpace profile was created or maintained by appellant or that the photographs are accurate representations of the scenes depicted, we nevertheless would conclude that any error was harmless in light of the admission, without objection, of similar evidence.  *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 905, 178 L. Ed. 2d 760 (2011) (stating that improper admission of evidence was harmless "in light of the proper admission into evidence of very similar" evidence).  The MySpace printouts were admitted to "show and indicate gang affiliation and gang signs," and although there were no other photographs admitted of appellant making gang signs with his hands, the photographs that were taken by a deputy sheriff were admitted without objection, and show that appellant has tattoos of such hand signs and of many other emblems of gang membership.  The evidence of appellant's gang membership was overwhelming; in closing argument, even appellant's counsel stated, "Mr. Rene is in a gang.  He's pretty high up."  The MySpace printouts also show appellant with a pistol, and it is not possible to tell whether the gun in the photo was loaded or even whether it was real.  In contrast, when officers went to the townhouse where appellant was staying to question him about a homicide, the guns they seized were indisputably real, and one of them was loaded with a shell in the chamber.  As with the photographs of appellant's tattoos, the guns were admitted into evidence without objection, and just as appellant's counsel stated in closing argument that appellant is a member of a gang, so too appellant's counsel stated in closing argument that appellant pled guilty to possessing the firearm.

In sum, everything shown by the MySpace photos was also shown by other, stronger evidence that was admitted without objection. On this record, we conclude that the evidence obtained from the MySpace profile could have had no more than the slightest effect on the jury's assessment of punishment.  We accordingly overrule the sole issue presented for our review.

9

## IV. CONCLUSION

Because we conclude that any error in admitting printouts of photos from the MySpace profile was harmless, we affirm the trial court's judgment.

/s/     Tracy Christopher
             Justice

Panel consists of Justices Frost, Brown, and Christopher.

Publish — TEX. R. APP. P. 47.2(b).