**Affirmed; Memorandum Opinion filed December 20, 2012 Withdrawn, and Substitute Memorandum Opinion filed January 31, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00573-CR

---

**REUBEN COLBERT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1264286**

---

## SUBSTITUTE MEMORANDUM OPINION[1]

---

[1] We withdraw our memorandum opinion issued December 20, 2012, and issue this opinion in its place.

Appellant Reuben Colbert appeals his conviction for aggravated sexual assault of a child, challenging the sufficiency of the evidence to support his conviction and asserting harm and violation of his due-process rights through the admission of allegedly improper impeachment testimony offered by the State against its own witness. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the offense of aggravated sexual assault of a child, Sara,[2] a twelve-year-old girl. Sara told her mother that appellant, an adult, had sexual intercourse with her at a relative's home as friends and family members were helping the relative move to a new home. Sara's mother notified authorities. Investigating officers referred Sara to the Children's Assessment Center, where Sara underwent a sexual-assault examination and talked with counselors about the incident. Appellant pleaded "not guilty" to the charged offense.

At trial, Sara testified that during the summer of 2009, she, appellant, and others were helping a relative move into a new home. According to Sara, during the move, appellant spoke with her and inquired about her virginity. Sara claimed to have been attracted to him, and eventually the two laid next to each other in a bedroom while the move took place. According to Sara, other minors, including her sister, were asleep in the same room at the time. Sara testified that she and appellant began to kiss after first "cuddling" together and chatting on the bedroom floor. Sara testified that she straddled appellant and began to "grind" on him; the two then disrobed and continued kissing as appellant retrieved a condom. Sara testified that appellant had sexual intercourse with her while she straddled him for

---

[2] To protect the privacy of the complainant in this case, we identify her by a pseudonym, "Sara."

nearly five minutes. She testified that appellant placed his penis inside of her "private area," which she described as her female sexual organ, and she moved her body up and down.

Sara testified that the conduct occurred while the others in the room were sleeping, and the conduct ceased when Sara's sister awoke; Sara pretended to be asleep when her sister called for her. Sara claimed that she and appellant got dressed after Sara's sister left the room. When family members asked Sara about the incident in the weeks to follow, Sara at first denied having engaged in sexual intercourse with appellant. Sara later told her mother and an aunt that, during the move, she and appellant had sexual intercourse.

At trial, Matt,[3] appellant's nephew and also Sara's fifteen-year-old cousin, testified that he also helped the relative move. According to Matt, through a crack in a bedroom door, he was able to observe Sara and appellant together on the floor in a bedroom. Although Matt testified that he observed Sara, wearing a sports bra, on top of the appellant, Matt denied having seen the two engage in sexual conduct. When asked about prior statements that he had made to investigators and other adults following the incident, Matt denied having expressed any belief that appellant and Sara had engaged in sexual intercourse. Matt reported to investigators that Sara had a condom in her hand on the morning after the move, but Matt testified at trial that the condom was unopened and appellant was no longer at the home at that time. Matt admitted to being related to both Sara and appellant, and denied that family members pressured him to avoid testifying in the case.

---

[3] To protect the privacy of the juvenile witness in this case, we identify him by a pseudonym, "Matt."

The State called Mark,[4] Matt's father, to testify for the purpose of impeaching Matt's testimony. According to Mark, Matt stated that he had observed Sara and appellant engaging in sexual intercourse during the move. Mark testified that he accompanied Matt to an interview with prosecutors related to the underlying case. Mark confirmed that during the interview Matt told prosecutors that Sara was not wearing a shirt and that he observed Sara on top of appellant. Mark confirmed that in the interview Matt explained to the prosecutors that Sara and appellant were under covers and that he observed the covers moving up and down. Mark confirmed that Matt told prosecutors he believed the two were engaging in sexual intercourse because the covers slid off of Sara and he saw her moving up and down on top of appellant. Mark confirmed that Matt told prosecutors that he found condom packages the next morning and believed that Sara and appellant had engaged in sexual intercourse. Mark confirmed that Matt told prosecutors that he had been getting a lot of pressure from his mother, appellant's sister, to change his "story."

The investigating officer also testified and had taken statements from Sara and Sara's mother. A video recording of Sara's interview with the investigating officer was admitted into evidence. As reflected in the video, Sara told the investigating officer that she had engaged in sexual intercourse with appellant, describing the sexual conduct with specific detail. The investigating officer also spoke with Matt, who claimed to have observed appellant and Sara engaging in sexual intercourse. According to the investigating officer, Matt's observations and account were consistent with Sara's account of the incident.

---

[4] Mark is a pseudonym for Matt's father.

4

The doctor who conducted the sexual-assault examination of Sara also testified and recalled Sara's admission that she had engaged in sexual intercourse with appellant. Sara explained to the doctor that appellant placed his "private" in her "private area" and that appellant wore a condom. The doctor testified that she examined Sara about four weeks after the incident occurred and that because of the time that had passed, the results from the physical exam were not a basis to either rule out or confirm the possibility of sexual abuse or penetration.

Appellant called Sara's thirteen-year-old sister to testify. The sister claimed to have been in the same room as Sara on the night of the move. The sister denied seeing Sara and appellant alone and claimed that Sara had a reputation for not telling the truth. Matt's mother also testified and claimed that Matt did not tell the investigating officer that appellant had sex with Sara.

The jury found appellant guilty of the charged offense. During the punishment phase, appellant testified and denied engaging in sexual conduct with Sara. Appellant was sentenced to nine years' confinement and now appeals his conviction.

## SUFFICIENCY OF THE EVIDENCE

In appellant's first point of error, he contends the evidence is insufficient to support his conviction. In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*,

819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

The indictment alleged that, on or about July 25, 2009, appellant intentionally and knowingly caused the penetration of the female sexual organ of Sara, a person younger than fourteen years of age, by placing his sexual organ in the female sexual organ of the complainant. A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly (1) causes the penetration of the anus or sexual organ of a child, under the age of fourteen, by any means, or (2) causes the sexual organ of a child, under the age of fourteen, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B)(i), (B)(iii), (a)(2)(B) (West 2011).

Appellant asserts that there was no credible evidence of penetration, a necessary element of the charged offense. The record reflects Sara's testimony that appellant placed his penis "inside" of her "private area," which she confirmed was her female sexual organ. She testified that she was twelve years old at the time of the incident. Sara explained that she straddled appellant and moved her body up and down as his penis was inside her. The recorded video interview,

which was admitted into evidence, reflects Sara's description to the investigating officer as to how appellant placed his penis, which she referred to as "his private area," in her vagina. Sara informed her mother as well as the sexual-assault examiner and the investigating officer that appellant had engaged in sexual intercourse with her. The testimony of a child complainant, standing alone, is sufficient to support a conviction for sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West 2011); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding a child complainant's unsophisticated terminology alone established element of penetration beyond a reasonable doubt); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

The record also contains the sexual-assault examiner's testimony that Sara admitted that approximately four weeks before the doctor's physical examination, she and appellant had engaged in sexual intercourse. Although appellant asserts that the results of the doctor's physical examination could not confirm that appellant had engaged in sexual intercourse with Sara, the doctor explained that it is common to receive "normal" test results when a physical examination occurs later than seven to ten days after a sexual assault. There is no requirement that a child complainant's testimony be corroborated by medical or physical evidence. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Bargas*, 252 S.W.3d at 888–89.

Appellant asserts that Sara offered conflicting testimony, pointing to testimony that Sara, at first, denied having sex with appellant and then later changed her account when confronted by her mother. Appellant also points to testimony in the record that he has noticeable scarring on his torso from being burned in a fire as a young person and that Sara made no reference to the scars in

her testimony, suggesting that her testimony cannot support his conviction. Appellant also points to Matt's trial testimony in which Matt denied having witnessed appellant and Sara engage in sexual intercourse. Despite Matt's testimony, the record contains other testimony from an investigating officer and Mark that Matt had expressed a previous belief that, during the move, he had seen appellant engaging in sexual conduct with Sara. The record also reflects that Matt encountered familial tensions as a result of the sexual-assault allegations. The jury, as trier of fact, held the ultimate authority to weigh the credibility of the witnesses and the testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 2013); *Bargas*, 252 S.W.3d at 889. The jury judged the credibility of the witnesses and reconciled conflicts in the evidence, and could have accepted or rejected any or all of the evidence on either side. *See Bargas*, 252 S.W.3d at 889. Viewing the evidence in the light most favorable to the verdict, we conclude the jury, as a rational trier of fact, could have determined that the essential elements of the offense were satisfied beyond a reasonable doubt. *See id*. Therefore, the evidence is sufficient to support appellant's conviction for aggravated sexual assault. *See id.* Accordingly, we overrule appellant's first issue.

## ADMISSION OF IMPEACHMENT TESTIMONY

In his second issue, appellant asserts that he was harmed and denied due process when the State was permitted to introduce allegedly improper impeachment testimony through Mark. Mark's impeachment testimony consisted of Matt's prior inconsistent statements to his father and prosecutors that Matt had observed appellant and Sara engaged in sexual conduct. On appeal, appellant complains of Mark's testimony of familial friction that suggested Matt had been unduly pressured by his mother to change his account of the event in question.

8

Appellant asserts that Mark's testimony was improper impeachment evidence that prejudiced appellant's right to a fair trial and deprived him of due process of law.

The record contains Mark's testimony of "tension" between Matt and Matt's mother because of the underlying sexual-assault charges against appellant. Mark described how Matt felt a "push" of sorts "to morally side with" appellant so that appellant, Matt's uncle, "wouldn't get in trouble." The record also contains Mark's testimony that Matt believed appellant and Sara were engaging in sexual intercourse because the covers slid off of them, testimony which appellant characterizes on appeal as hearsay evidence. No objections were raised during either of these instances of Mark's testimony. The record reflects Mark's subsequent confirmation that Matt spoke about being pressured by his mother to change his account. At that point, appellant asserted a hearsay objection, which was sustained by the trial court.

Even presuming, without deciding, that that appellant's hearsay objection to some of Mark's testimony regarding whether Matt was pressured to change his account preserved appellant's challenge on appeal to improper impeachment testimony, any error was harmless in light of the admission of similar evidence at trial without objection. *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (stating that improper admission of evidence was harmless "in light of the proper admission into evidence of very similar" evidence); *Rene v. State*, 376 S.W.3d 302, 307 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (concluding that had evidence been improperly admitted at trial, error would be harmless in light of admission of other similar evidence without objection). Such evidence already had been admitted, without any objection, when Mark spoke of the family tension and the "push" for Matt to "morally side" with appellant so that

appellant could avoid getting into trouble.  Accordingly, we overrule appellant's second issue.

The trial court's judgment is affirmed.



/s/ Kem Thompson Frost
   Justice


Panel consists of Justices Frost, Christopher, and Jamison.
Do Not Publish — TEX. R. APP. P. 47.2(b).

10