**Opinion filed August 21, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00308-CR
_____

**DAKOTA LEE HOYT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-21-1674-CR**

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Dakota Lee Hoyt, of three counts of aggravated sexual assault of a child under the age of six, first degree felonies. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (e) (West 2019). Prior to the charge conference and during the punishment phase, the trial court granted the State's motion to cumulate and ordered the sentences for Counts One and Two to run concurrently and the sentence for Count Three to run consecutively to Count One. The jury subsequently

assessed Appellant's punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice, for each count. The trial court sentenced Appellant in accordance with the jury's verdict. Appellant challenges his conviction in two issues. First, he contends that the evidence is insufficient to support his convictions. Second, he submits that the trial court committed reversible error by admitting several exhibits—messages and posts from a website that he alleges are unauthenticated—over his objection. We modify and affirm.

*Factual and Procedural History*

Appellant was indicted for three counts of aggravated sexual assault of his daughter, A.H. The following witnesses testified during the trial.

*Donna Cave*

Donna Cave testified that she is A.H.'s great grandmother and that A.H.'s mother, B.H., is Cave's granddaughter. In July 2021, Cave resided with B.H., Appellant, and their three young children, including A.H. During that time, Cave provided daily care for the children. One evening in July 2021, when Cave was giving five-year-old A.H. a bath, she noticed that A.H.'s "hiney . . . was red, real red." Cave inquired about the redness, to which A.H. said, "My daddy put his privates in my butt." Cave explained that A.H. appeared "sad" and did not seem to want to discuss it any further.

Cave's testimony regarding the timing of events, including when she revealed A.H.'s condition and statements to others, is imprecise and confusing. On cross-examination, she explained, "I told you I don't remember dates real good. I'm 66 years old. My mother and dad both had Alzheimer's and dementia. It's in the family and I'm sorry." Cave testified that she told her daughter what happened and that it was reported to Child Protective Services (CPS).

*Araceli Arellano*

Araceli Arellano is a forensic interviewer who interviewed A.H. after her initial outcry. According to Arellano, A.H. disclosed that "her daddy . . . puts his private parts in [A.H.'s] face, her butt, and her mouth." A.H. also complained that Appellant "puts his private in [her] private." A.H. clarified to Arellano that private parts "are to pee." A.H. described feeling pain when Appellant "put his private parts in her butt." A.H. stated to Arellano that Appellant puts his "private parts" in her mouth and "pees" in it. A.H. indicated that she had seen pornography on Appellant's phone. Arellano testified that A.H. told her that Appellant's "sexual abuse happened a lot" and that Cave gave her and her siblings candy after A.H. made her initial outcry. Arellano described A.H. as "speaking like a normal five-year-old."

Arellano also interviewed A.H.'s siblings, who said that "[A.H] was lying on Daddy." The siblings explained that "[A.H.] lies all the time." However, Arellano described the language used by the siblings as "unusual" and elaborated that the children stated they had heard their mother and Appellant discussing these things or that the parents had told them directly.

*Martha Banda*

Martha Banda is a registered nurse and Sexual Assault Nurse Examiner (SANE) who worked at Medical Center Hospital in Odessa. Banda performed a forensic sexual assault exam on A.H. Although Banda did not note any trauma to A.H.'s face or mouth, she did not find that unusual. Similarly, Banda did not observe any trauma to A.H.'s vagina. However, Banda did note trauma to A.H.'s rectum, explaining that it was dilated with a "red purple area on the lower part." Banda explained that a rectum may be dilated due to medical conditions or needing to use the bathroom; however, she did not note any stool present for A.H. and ruled those out as potential causes. According to Banda, this correlated more with trauma than

3

any medical condition or needing to use the bathroom. Overall, Banda testified that the exam was consistent with trauma through anal penetration.

*Jodi Alvarado*

Jodi Alvarado testified that she was the Ector County Sheriff's Office (ESCO) investigator assigned to investigate the allegations against Appellant. Investigator Alvarado executed a search warrant for Appellant's property and recovered a "Samsung Galaxy S8 Active" cell phone from his residence that she understood to belong to Appellant. The cell phone was given to Homeland Security Investigations for a forensic analysis and admitted as an exhibit.

*B.H.*

B.H., A.H.'s mother, testified that she, Appellant, and their children resided in Odessa when the allegations were made. B.H. explained that Cave, her grandmother, lived with them "off and on," but lived with them more than away from them. According to B.H., Cave was "like [a] mother" to the children. But B.H. described Cave and Appellant as having "a love/hate relationship" and stated that they "butt[ed] heads a lot."

Following A.H.'s outcry, Appellant was required by the CPS safety plan to move out of the house and was not allowed to return. B.H. agreed that she and Appellant discussed Cave moving out in May, before the allegations regarding A.H.'s sexual assault were communicated to B.H. However, as part of the CPS safety plan, Cave was asked to move back in to help with the children. Before the living arrangements changed, B.H. tried to get A.H. alone to talk to her, but Appellant "seemed pretty anxious" about it, "like he did not want [B.H.] to be alone with [A.H.]."

While in the Ector County jail awaiting trial, Appellant sent B.H. an e-mail asking her to change his password, "stretchxwood2020." A copy of the e-mail was admitted as an exhibit. B.H. explained that Appellant used the term "stretchxwood"

on websites and around town, stemming from his nickname, "'Stretch[,]' because he was so tall."

B.H. described an incident where she and her cousin made a quick trip to the store and, upon returning, caught Appellant watching pornography and masturbating in the same room with the children. But B.H. agreed that Appellant "had almost no time alone with all three of th[e] kids" because "he was in jail for DWI" or "other minor offenses," he was recovering from ankle surgery, or he was otherwise not there. B.H. confirmed that A.H. said that Cave gave her candy "for [saying] bad stuff about" Appellant. Moreover, Appellant's parents were watching A.H. at one point, and they brought A.H. to B.H. and told A.H. to "tell [B.H.] what you just told us." A.H. then told B.H. that she lied about the accusations because Cave told her to say it and she would get candy.

B.H. acknowledged that Adult Protective Services (APS) responded to allegations that Appellant was physically abusing Cave and that she told APS that Cave was lying. B.H. confirmed that A.H. did not have any chronic issue of bowel disorders or constipation around the time of her SANE exam, thus corroborating Banda's exclusion of these as potential causes of the reddened condition of A.H.'s rectum.

*Jason Grijalva*

Special Agent Jason Grijalva is employed by Homeland Security Investigations. In September 2021, Special Agent Grijalva was assisting the Washington D.C. field office in investigating the website "Rapey.su." After Special Agent Grijalva's assignment was completed, he searched through the website's data, which was seized by the federal government, for towns in his area of responsibility. Special Agent Grijalva discovered user information on the website under the e-mail "dakotahoyt04@gmail.com" with the username "stretchxwood," which was created on October 1, 2020. Moreover, the user listed Odessa, Texas as their location and

5

their date of birth as December 17, 1991. Under a prompt that said: "Tell us about yourself," the user stated "28 year old father of 3. 2 girls one boy." Another prompt asked, "If a man wants to rape his 3-year-old daughter up every hole while she's crying and screaming, do you have a problem with that," to which the user responded, "No problem at all." This information was admitted as State's Exhibit No. 9.

Special Agent Grijalva used the e-mail to search for the user and discovered Appellant's information and photographs, which matched those on the rapey.su account. A screenshot image of the account's "About" tab was also admitted as State's Exhibit No. 10, which repeated the information found in State's Exhibit No. 9. B.H. later confirmed that the user information from "stretchxwood" on rapey.su matched that of Appellant's, including age, race, height, hair color, and eye color.

State's Exhibit No. 11 included an October 1, 2020 post by "stretchxwood" asking "Any pedom9ms [sic] with cute young girls?" State's Exhibit No. 12 included a post from another user that stated, "[W]hen [I] was from about 4 to 5 and maybe even 6 years old[,] my father would have me do things in the bathtub and do things to me. [H]e'd have me touch his [penis] and things like that. [H]e'd also touch me. [I] would ask him to." "Stretchxwood" responded, "I do this to my 4 year old. She[']s always trying to pull my [penis] out [of] my pants now and suck it or put it on her young [vagina.]" State's Exhibit Nos. 13 and 14 contained several responses from "stretchxwood" to various posts by other users, including one post by a user seeking older men looking for "jailbait."

*Noel Vidal*

Special Agent Noel Vidal with the Department of Homeland Security testified that he is assigned to the Midland, Texas office. Special Agent Vidal was contacted by Investigator Alvarado to perform a "forensic dump" on a cell phone. A portion

6

of the recovered data was admitted as exhibits, including some photos, subscriber information for dakotahoyt04@gmail.com, and search history. On July 22, 2021, one day after the allegations against Appellant surfaced, the user performed a Google search for "can cops still find deleted stuff on phones" and "how far back can cops recover deleted stuff on phones." The user also visited webpages titled "Convictions Through Hearsay in Child Sexual Abuse Cases" and "So You're Faced with Child Hearsay: What's In, What's Not." On April 17, 2021, the device's user searched "dad and friends took turns with me story."

*Carol Hoyt*

Carol Hoyt testified that she is Appellant's mother. Carol explained that her grandchildren "were at [her] house all the time, like every single weekend." When Carol heard about the allegations against Appellant, she asked A.H. if Appellant did anything to her. According to Carol, A.H. said that "[Cave] told [her] to say that." Carol testified that A.H. never appeared to be afraid of Appellant or demonstrated changes in behavior or demeanor. Carol also agreed that Appellant was out of the home for a couple of months in the beginning of 2021 because "[he] had some problems with the law."

*William Hoyt*

William Hoyt testified that he is Appellant's father. William described having "quite a bit of problems" with Cave. After learning about the allegations against Appellant, William also took A.H. aside and asked if Appellant did "bad things" to her. According to William, A.H. denied that Appellant did anything to her. When William asked A.H. why she made the allegations, she responded, "Because [Cave] gives me candy to say those." William described A.H. as "always a healthy, happy child," and denied that she ever changed how she acted with Appellant. William confirmed that Appellant's nickname is "Stretch."

William explained that "several people" had access to Appellant's phone, including B.H.'s mother, who used it to send William text messages requesting money and cigarettes, though he could not recall the timeframe. However, William did not believe that B.H.'s mother lived with B.H. and Appellant during 2020.

## Sufficiency of the Evidence

In his first issue, Appellant argues that the evidence was legally insufficient to support his convictions.

### A. *Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Brooks*, 323 S.W.3d at 895; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we must defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778.

We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we determine whether the necessary inferences are based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clement v. State*, 248 S.W.3d 791, 796 (Tex. App.— Fort Worth 2008, no pet.). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

The evidence need not directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the defendant's conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we treat direct and circumstantial evidence equally, and we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

Appellant attacks the sufficiency of the evidence on three separate bases: (1) the lack of evidence regarding when and where the alleged sexual assaults occurred, which he asserts "are important elements of the offense"; (2) the lack of testimony from A.H. and the inclusion of testimony that Cave had a motive to fabricate the allegations; and (3) the lack of "significant physical, forensic, or medical evidence that substantiated the allegations."

9

B. *Applicable Law*

As relevant here, a person commits the offense of aggravated sexual assault of a child under Section 22.021(a)(1)(B) if he intentionally or knowingly:

(iii) causes the sexual organ of a child to contact his sexual organ;

(iv) causes the anus of a child to contact his sexual organ; or

(v) causes the mouth of a child to contact his sexual organ.

PENAL § 22.021(a)(1)(B)(iii–v). Where, as here, the child victim is under the age of six at the time the offense is committed, the minimum term of imprisonment is twenty-five years. *See id.* § 22.021(f)(1).

The uncorroborated testimony of a child victim is alone sufficient to support a conviction for an offense under Section 22.021. TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (West 2023); *Wishert v. State*, 654 S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd). Similarly, a child victim's outcry alone can be sufficient to support a sexual-assault conviction. *Chavez v. State*, 324 S.W.3d 785, 788 (Tex. App.—Eastland 2010, no pet.); *see also Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

"[V]enue is not an 'element of the offense' under Texas law." *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). "[T]he Texas Rules of Appellate Procedure permit appellate courts to presume that venue was proven unless venue is 'disputed in the trial court' or 'the record affirmatively shows the contrary.'" *Id.* at 35 (citing TEX. R. APP. P. 44.2(c)(1)). Accordingly, venue does not implicate the sufficiency of the evidence. *Id.* Similarly, it is not necessary to prove the exact offense dates alleged in the indictment, so long as the State shows that the alleged offense occurred before the indictment was returned and within the applicable statute of limitations. *Klein v. State*, 273 S.W.3d 297, 303 n.5 (Tex. Crim. App. 2008).

C. *Analysis*

Contrary to Appellant's bare insufficient evidence assertions, the date(s) and location of the offenses are not essential elements of the offenses of which he was charged. *See Schmutz*, 440 S.W.3d at 34; *Klein*, 273 S.W.3d at 303 n.5. Because Appellant did not challenge venue in the trial court and the record does not affirmatively disprove the proper venue, we presume venue was proven. *See* Tex. R. App. P. 44.2(c)(1); *Schmutz*, 440 S.W.3d at 35. As for the dates of the offenses, Appellant does not contend that they occurred after the indictment or outside the statute of limitations. *See Klein*, 273 S.W.3d at 303 n.5; *see also* CRIM. PROC. art. 12.01(1)(B) (West Supp. 2023) (establishing that there is no statute of limitations for the offenses with which Appellant was charged).

A.H.'s outcry as presented through Cave and Arellano alone are sufficient to affirm Appellant's convictions. *See Chavez*, 324 S.W.3d at 788. Moreover, a victim's testimony need not be corroborated by medical or physical evidence to be sufficient to support a conviction. *Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Thus, Appellant's complaints that A.H. did not testify and that there is not "significant" corroborating physical, forensic, or medical evidence are unavailing. *See Chavez*, 324 S.W.3d at 788. It was not necessary for A.H. to testify or for the State to produce corroborating evidence. *See id.*

As for Cave's potential motivation to "coach" A.H., the jury was presented with conflicting testimony regarding any attempts to do so. Thus, it was the jury's role to evaluate the weight and credibility of the evidence and resolve any conflicts, which they presumably did in favor of the verdict. *See Jackson*, 443 U.S. at 319; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899. Moreover, in addition to A.H.'s outcry that Appellant put his "private" in her face, mouth, "butt," and

"private," the post on rapey.su by "stretchxwood" that he abused his daughter supports the allegations against Appellant.[1]  *See Winfrey*, 393 S.W.3d at 767. Finally, although it is not required, forensic evidence *was* presented to support the conviction: Banda testified that A.H.'s SANE exam revealed trauma to A.H.'s rectum that was consistent with sexual assault and no other explanation was found.

After reviewing the entire record, we conclude there was sufficient evidence for a rational jury to logically infer and conclude beyond a reasonable doubt that Appellant committed the offenses as charged.  *See* PENAL § 22.021(a)(1)(B); *Jackson*, 443 U.S. at 319

Appellant's first issue is overruled.

*Authentication for Social Media Posts*

In his second issue, Appellant complains that the trial court erred by admitting State's Exhibit Nos. 11, 12, 13, and 14 because they were not properly authenticated.

A.  *Relevant Facts*

State's Exhibit Nos. 9 and 10, which included user information for "stretchxwood" on rapey.su, also included personal information that matched Appellant's and were admitted without objection.

Prior to the trial court ruling on the admissibility of State's Exhibit No. 11, Appellant took Special Agent Grijalva on voir dire.  Special Agent Grijalva agreed that one would need an electronic device with internet access to use the website. Special Agent Grijalva further agreed that a person with a particular username and password could log onto that account, not just the user to whom the account belongs. Appellant then objected, arguing "we can't tell who is actually putting this information into the Web site based on that testimony."  The State responded, arguing that the information includes pertinent descriptors, namely, Appellant's name, date

---

[1]Appellant conceded in closing argument that he had been posting on the website, but maintained he was not on trial for said conduct.

12

of birth, and e-mail address, as well as pictures of him from the account. The trial court overruled Appellant's objection and Appellant then requested a "running objection to anything posted from [the] Web site." The trial court admitted State's Exhibit No. 11, which includes a post by "stretchxwood" seeking "pedom9ms [sic] with cute young girls."

The State then sought to introduce State's Exhibit No. 12, to which Appellant responded, "Outside of what we discussed, no objection." As we have said, Exhibit No. 12 included a post from an unknown user that stated, "[W]hen [I] was from about 4 to 5 and maybe even 6 years old[,] my father would have me do things in the bathtub and do things to me. [H]e'd have me touch his [penis] and things like that. [H]e'd also touch me. [I] would ask him to." The user "stretchxwood" responded, "I do this to my 4 year old. She[']s always trying to pull my [penis] out [of] my pants now and suck it or put it on her young [vagina.]" The State then offered State's Exhibit Nos. 13 and 14, which included several responses from "stretchxwood" to various posts by other users. Appellant responded, "Same response from defense, Your Honor." Exhibit Nos. 12, 13, and 14 were all admitted.

B. *Standard of Review and Applicable Law*

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901. "A proponent of evidence is not required to 'rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'" *Cook v. State*, 460 S.W.3d 703, 712 (Tex. App.—Eastland 2015, no pet.) (quoting *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.)). "Rule 901 'does not [create] a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence.'" *Id.* at 713 (quoting *Campbell*, 382 S.W.3d at

13

549). Once admitted, it is up to the factfinder to determine whether the item is what the proponent claims it to be. *See id.* at 712.

The Court of Criminal Appeals examined the authentication of social media posts, holding that evidence can authenticate such posts with references to specific details that only the purported author would know—messages referring to the alleged incident, unique photos of the purported author, and other details specific to the defendant. *Tienda v. State*, 358 S.W.3d 633, 642–45 (Tex. Crim. App. 2012). Since *Tienda*, we and several of our sister courts have found no abuse of discretion for a trial court's decision to admit exhibits of social media accounts based on similar grounds. *See, e.g.*, *Woods v. State*, No. 11-15-00134-CR, 2017 WL 3711104, at *5–6 (Tex. App.—Eastland Aug. 25, 2017, no pet.) (mem. op., not designated for publication) (appellant's Facebook posts); *Coe v. State*, No. 09-13-00409-CR, 2015 WL 3898001, at *10 (Tex. App.—Beaumont June 24, 2015, pet. ref'd) (mem. op., not designated for publication) (appellant's Facebook messages); *Miller v. State*, No. 11-11-00350-CR, 2013 WL 5636375, at *2–3 (Tex. App.—Eastland Oct. 10, 2013, pet. ref'd) (mem. op., not designated for publication) (appellant's MySpace profile); *Campbell v. State*, 382 S.W.3d 545, 548 (Tex. App.—Austin 2012, no pet.) (Facebook messages sent by appellant); *Rene v. State*, 376 S.W.3d 302, 304 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (photographs of appellant on his MySpace profile).

"[W]hether or not to admit evidence at trial is a preliminary question to be decided by the [trial] court." *Tienda*, 358 S.W.3d at 637–38 (citing TEX. R. EVID. 104(a)). As such, "review of a trial court's ruling on such a preliminary question of admissibility is deferential; the standard is abuse of discretion." *Id.* at 638. "If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least 'within the zone of reasonable disagreement,' a reviewing court should not interfere." *Id.*

14

C. *Analysis*

Appellant argues that here, there was no authenticating evidence that "link[ed]" Appellant to the posts as there was in *Tienda*. Further, Appellant contends that "[t]he State could not disprove that other people in his household, especially ones with motive to remove [Appellant] from their lives, could have authored those posts." Therefore, he contends, the contested exhibits were not properly authenticated. We disagree.

We note that Appellant did not object to the admission of State's Exhibit Nos. 9 and 10, which included the information for the "stretchxwood" profile, such as Appellant's e-mail address, date of birth, height, eye and hair color, and location. Moreover, the account was named after Appellant's known nickname, "Stretch," and was similar to the password to his e-mail account, "stretchxwood2020." Moreover, photographs of Appellant were posted on the account. This is some evidence linking Appellant to the posts.

As for State's Exhibit Nos. 11, 12, 13, and 14, we note that State's Exhibit No. 11 was posted on October 1, 2020, the same day that the account with Appellant's information was created. *See Tienda*, 358 S.W.3d at 642–43 (considering that the social media account contained the appellant's name, nickname, city, and photographs when concluding the exhibits were sufficiently authenticated). State's Exhibit No. 12 includes a post from a purported young girl disclosing that, when she was four to six years old, her father made her touch his penis and he would also touch her. In response, "stretchxwood" stated, "I do this to my 4 year old." *See id.* at 641 (noting that posts including information peculiar to the facts of the particular case can establish a prima facie showing of authentication). A.H. would have been four years old at the time of the posting, which was more than 260 days before the allegations were brought to light. *See id.* In State's Exhibit

Nos. 13 and 14, user "stretchxwood" indicated that they were 28 years old and in West Texas. *See id.*

"It is, of course, within the realm of possibility that [Appellant] was the victim of some elaborate and ongoing conspiracy" initiated by somebody with access to his cell phone or rapey.su login information, which was "an alternate scenario whose likelihood and weight the jury was entitled to assess once the State had produced a prima facie showing" that it was Appellant, not some other person, who created these incriminating posts. *See id.* at 645–46. Nevertheless, we conclude that Appellant's personal information, which matches that of the profile and personal information included in the posts, was sufficient to authenticate "stretchxwood's" rapey.su profile and posts and clear the relatively low hurdle of the trial court's gatekeeping role. *See* TEX. R. EVID. 104(a), 901; *Tienda*, 358 S.W.3d at 645; *Cook*, 460 S.W.3d at 713. Thus, the trial court did not abuse its discretion by admitting State's Exhibit Nos. 11, 12, 13, and 14.

Appellant also broadly argues that "the evidence was prejudicial and had no probative value other than to inflame the minds of the jurors. The State used this evidence as character evidence to prove [Appellant]'s character." To the extent Appellant intends to argue that Rule 403 of the Texas Rules of Evidence required the exhibits to be excluded, Appellant failed to cite any authority to support this assertion, thereby waiving the argument due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i) (requiring an argument include "appropriate citations to authorities and to the record"). Moreover, Appellant only objected to the posts' authentication before the trial court, thereby failing to preserve this Rule 403 argument for appellate review. *See id.* R. 33.1 (requiring Appellant to make a timely objection to the trial court in order to present a complaint for appellate review). Appellant's second issue is overruled.

*The Trial Court's Cumulation Order*

Although not raised on appeal by either party, we note that the trial court's judgment for Count Three includes an order that the sentence for that count shall run consecutively to the sentence imposed in Count One; however, the trial court did not state that such sentence would run consecutively *at the time* it orally pronounced Appellant's sentence in open court. Prior to the charge conference in the punishment phase of trial, the State presented a motion to cumulate Appellant's sentences. The trial court granted the motion, albeit prematurely, at that time. Following closing arguments and the jury's punishment verdicts, the trial court pronounced Appellant's three life sentences in open court but did not include its cumulation order during its pronouncement. Instead, the trial court stated that Appellant's "sentence will start this day" and remanded him to the custody of the Ector County Sheriff.

"[A] trial judge may not cumulate sentences in the written judgment if he did not do so in his oral pronouncement." *Sullivan v. State*, 387 S.W.3d 649, 652 (Tex. Crim. App. 2013); *Ex parte Madding*, 70 S.W.3d 131, 136 (Tex. Crim. App. 2002) (The trial court must make a cumulation order "at the time and place that [the] sentence is orally pronounced" if it wishes to "stack" a defendant's sentence.); *Grays v. State*, 291 S.W.3d 555, 558 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (the trial court did not order cumulation in open court while pronouncing the defendant's sentences). Because an unlawful cumulation order does not constitute reversible error, the appropriate remedy is to reform the trial court's judgment and delete the cumulation order. *Sullivan*, 387 S.W.3d at 653; *Beedy v. State*, 250 S.W.3d 107, 114–15 (Tex. Crim. App. 2008); *see Madding*, 70 S.W.2d at 137. We therefore modify the judgments in Counts One and Three to delete the trial court's cumulation orders.

17

*This Court's Ruling*

We affirm the trial court's judgment for Count Two. We modify the trial court's judgments for Counts One and Three to delete the cumulation orders and show that the sentences imposed against Appellant in those counts shall be served concurrently. As modified, we affirm the judgments of the trial court for Counts One and Three.

W. BRUCE WILLIAMS
JUSTICE

August 21, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.